RECEIPT #_____
AMOUNT $_____ 150-
SUMMONS ISSUED_____|_____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._____
DATE _2-12-04___

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

UTILITY WORKERS, LOCAL 369,
  Plaintiff,

  v.

EXELON NEW ENGLAND POWER
SERVICES, INC.,
  Defendant.

C.A. No.

**04 CV 10293 DPW**

MAGISTRATE JUDGE _Bowler_

**VERIFIED COMPLAINT**

## I.  INTRODUCTION

1.  The case arises under §301 of the Labor Management Relations Act, 29 U.S.C. §185. The plaintiff's claims arise out of a collective bargaining agreement between the parties. Plaintiffs request equitable relief in aid of arbitration prohibiting the reduction in force of more than fifty percent (50%) of the workforce at Mystic Station Units 4,5,6, & 7 ("Mystic 4-7") pending completion of contractual processes.

## II.  PARTIES

2.  Plaintiff Utility Workers, Local 369 ("Union" or "Local 369") is a labor organization within the meaning of §301, LMRA.  Local 369 is the collective bargaining representative of approximately 77 of defendant's engineers, operators, mechanics, technicians, electricians, and clerical employees at the Mystic 4-7.

3.  Defendant Exelon New England Power Services, Inc. ("Exelon Service Company"), is a service company that employs Local 369 members at Mystic 4-7, New Boston Station, Medway Station, and the Framingham Station.

4.  On or about November 1, 2002, Exelon Service Company became a successor to a collective bargaining agreement between Local 369 and Sithe New England Power Services, Inc. with an expiration date of September 30, 2005. A true and accurate copy of the collective bargaining agreement is attached hereto as Exhibit A.

**III.    JURISDICTION AND VENUE**

5.  This Court has jurisdiction under 28 U.S.C. §1331 in that plaintiffs' claims arise out of collective bargaining agreements, suits for violations of which are authorized by §301, LMRA.

6.  Venue is proper in the district of Massachusetts under 28 U.S.C. §§ 1391(b)(2), 1391 (c) in that all of the events and omissions giving rise to the claim occurred within the district of Massachusetts and Exelon Service Company, a Pennsylvania Corporation, is a corporation deemed to reside in this District.

**IV.    FACTS**

7.  Originally, Mystic 4-7 were owned and operated by Boston Edison. Local 369 represented the Mystic 4-7 employees at that time. As a result of deregulation, Boston Edison was forced to sell their power plants in 1997.

8.  Sithe New England Holdings, a subsidiary of Sithe Energies, Inc., purchased Mystic 4-7. Sithe New England Power Services, Inc. took over the operations of the plant and became a successor to the collective bargaining agreement between Local 369 and Boston Edison. In or about December 2000, Exelon Generation Company became a 49.9% owner of Sithe New England Holdings.

9.  On or about September 30, 2000, Local 369 and Sithe New England Power Services, Inc. entered into a collective bargaining agreement with an expiration date of September 30,

2005. The collective bargaining agreement provided the following successor clause: "[t]his agreement shall be binding upon the parties hereto and on all successors and assigns of the Employer, whether by sale, transfer, lease, merger, acquisition ..."

10. On or about November 1, 2002, Exelon Generation Company purchased Mystic 4-7 from Sithe and became the principal owner of the plants. Exelon acquired Sithe New England for $543,000,000 plus the assumption of project debt supporting the construction of new power plants, Mystic 8 & 9 and Fore River. Mystic 4-7 was used as collateral to secure the construction loan.

11. Exelon Generation Company created two service companies to run these plants. Exelon New England Power Services, Inc. was created to operate Mystic 4-7, New Boston Station, Medway Station, and the Framingham Station. Exelon Boston Service Company was created to operate Mystic 8 & 9 and the Fore River Station. Local 369 has collective bargaining agreements with both service companies.

12. Coterminous with Exelon Generation Company's purchase of Mystic 4-7, Exelon Service Company assumed operation of the plant and became a successor to the collective bargaining agreement between Local 369 and Sithe. This collective bargaining agreement expires in September 2005.

13. In or about July 2003, Exelon Generation Company defaulted on the construction loans for Mystic 8 & 9 and Fore River.

14. Upon information and belief, the note holder of the construction loans authorized Exelon New England Power Services, Inc to continue operating Mystic 4-7 and Mystic 8 & 9 until a new owner could be found.

3

15. In 2003, Exelon Generation Company filed an 18.4 document with ISO New England ("ISO-NE") requesting permission to retire Mystic Station Company 4, 5, & 6.[1] ISO-NE granted the request and Exelon retired Mystic Station Units 4, 5, & 6 on December 15, 2003.

16. The retired units, Mystic 4, 5, & 6, were known, colloquially, as the "Little Mystics." Twelve operators and one chemical control operator were required to safely operate these units. During the operating year 2003, Mystic Units 4-6 generated power for approximately thirty days. By comparison Mystic Unit 7 generated power virtually continuously last year. Although the total output of Mystic 4-6, running simultaneously, was theoretically capable of producing 37% of the plants capacity of 895 MW the actual output of Mystic 4-6 was approximately 15%..

17. As a result of the retiring of Mystic Station Units 4, 5, & 6, Exelon Service Company informed Local 369 of its intention to reduce the workforce by forty employees.

18. On Friday, February 13, 2004, Exelon Service Company will reduce its force at Mystic 4-7 by more than 50% in violation of the collective bargaining agreement.

19. Article XVI, of the collective bargaining agreement provides:

> No employee in the bargaining unit with five or more years of continuous service who desires continuing employment with the Company will be laid off for lack of work unless any of the units covered by this Agreement are deactivated, or the operations of any such units are suspended for an extended period of time of substantially curtailed.

---

[1] ISO New England Inc. is the not-for-profit corporation responsible for the day-to-day reliable operation of New England's bulk electric generation and transmission system.

20. Article IV, of the collective bargaining agreement provides:

> The Company recognizes an obligation to promote good employee relations by maintaining rates of pay, wages, hours of employment and other conditions of employment that are equitable, reasonable, and fair;

21. Article V, of the collective bargaining agreement provides:

> If the Local claims that the Company has exercised the right the right to suspend, discipline, demote or discharge employees in an unjust or unreasonable manner, such claim shall be subject to the Grievance Procedure in Article XXVIII and Arbitration under Article XXIX.

22. Article XX, of the collective bargaining agreement provides:

> [t]he primary function of a supervisor is supervision, and he is not to perform work which will eliminate an employee or interfere with supervision.

23. Article XXI, of the collective bargaining agreement provides:

> It is the policy of the Company to have its ordinary maintenance and repair work and such construction work, as is now the present practice, performed by its own employees except in cases of emergency, necessity or temporary peaks of work ... It is not the intention of the Company that the use of the services of outside contractors shall result in the layoff, demotion or reduction of pay of its regular employees.

24. Unless enjoined, Exelon Service Company's proposed cut will reduce the staffing at Mystic 4-7 from seventy-seven employees to thirty-seven employees.

25. The Mystic Power Plant cannot operate safely at this staffing level without employing contractors or utilizing supervisors to perform the work of Local 369 members covered under the collective bargaining agreement.

26. Of the thirty-seven remaining employees, only seventeen employees in the job classification Operator will remain. Operators, licensed by the Massachusetts Department of Public Safety, assure the safe operation of a power plant twenty-four hours a day, seven days a week. Each shift requires, at the very least, four Operators for the safe operation of Mystic 7. One of the seventeen Operators is dedicated to the precipitator and is not included in the four required for each shift. The remaining sixteen Operators are responsible for staffing the eighty-four shifts each week.

27. Sixteen Operators working five shifts a week can staff eighty of the eighty-four shifts required each week. Exelon Service Company's reduction would leave one shift every week without any Operator coverage.

28. Operators are responsible for, inter alia, patrolling the perimeter of the plant. This function is critical as the grounds contain 10,250,000 gallons of #6 Fuel Oil Storage, 50,000 gallons of #2 Fuel Oil Storage, 6 hydrogen storage tanks @ 2000 psi, and other hazardous materials.

29. Concerned with the low staffing levels and risk of harm, Local 369 filed an OSHA complaint requesting injunctive relief. A true and accurate copy of the filing is attached hereto as Exhibit B.

30. In addition to Operators, other job classifications will also be understaffed. There will only be one Chemical Control Operator. The Chemical Control Operator position

requires seven-day coverage. The Chemical Control Operator is responsible for assuring that both the water and the steam is pure and does not contain any contaminants.

31. Based on the years of operating Mystic4-7 as operators licensed by the Commonwealth of Massachusetts Department of Public Safety, Local 369 members employed at the Mystic Units respectfully aver and allege that the safe operation of Mystic 7 will be compromised if the layoff numbers exceed nineteen.

32. Absent equitable relief, Exelon Service Company's layoff of forty employees will reduce the workforce to an unsafe level exposing the remaining employees and the community to unacceptable safety risks.

33. Local 369 has protested the drastic and severe staffing cuts by filing grievances under Article XXVIII of the collective bargaining agreement. Copies of the grievances are attached hereto as Exhibit C.

34. The harm to the Union, its members, and to the collective bargaining process by permitting the Company to reduce the force to unsafe levels outweighs the harm to the Company by delaying implementation because; 1) maintaining safe operating levels does not place an undue financial burden upon the Company when compared with the potential for harm to the workers and the community; 2) the Union is willing to proceed to immediate arbitration, minimizing the harm of delay if the company is able to justify the reduction in force.

WHEREFORE, plaintiffs respectfully request that the court grant the following relief:

a)    Grant an order temporarily restraining Exelon Service Company, its officers, agents, employees and all those in active concert with it from reducing its Mystic 4-7 workforce below the level necessary to safely operate the plant pending arbitration of the union grievances.

b)    Grant an order compelling the Company to proceed to immediate arbitration on the question of whether the reduction in force violates the provisions of Article IV and creates unsafe and inherently inequitable working conditions;

c)    Enter a preliminary injunction enjoining the Company from implementing reduction in force of forty employees until such time as an arbitration panel endorses the Company's justification for reduction and compelling the Company to proceed to immediate arbitration on the question of whether the reduction is justified under the provisions of Articles IV, V, XVI, XX, and XXI;

d)    Grant such further equitable and legal relief as this court deems fitting and just.

Respectfully submitted,
**UTILITY WORKERS, LOCAL 369**
By their attorneys,

Paul F. Kelly, Esquire
BBO #267000
**SEGAL, ROITMAN & COLEMAN**
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Liam Paul Deeney
BBO #648145
Utility Workers' Union of America
Local 369
120 Bay State Drive
Braintree, MA 02184

Dated:  February 12, 2004

## VERIFICATION

I, Kevin Gregor, a Local 369 member and an Operator with Exelon Service Company, hereby verify that the facts contained in the foregoing Verified Complaint are true and correct to the best of my information and belief.

**Signed pursuant to the pains and penalties of perjury this 12th day of February, 2004.**

_____
Kevin Gregor